EMMA J. WOODWARD v. JESSE G. BALL ET AL.

(Filed 5 November, 1924.)

**Wills—Equity—Conversion—Descent and Distribution.**

Whether lands directed by the testator to be sold shall be regarded as personalty in whole or in part, under the doctrine of equitable conversion, depends upon his intent as gathered from his will; and a direction that his executor sell certain of his lands to pay his debts, and should a sur-

plus remain to pay it in certain amounts to designated beneficiaries, evidences his intent that the full proceeds of the sale should be regarded as personalty, and after satisfying the bequests, the remainder, as personalty, is subject to the appropriate canon of distribution.

APPEAL by plaintiff from *Grady, J.,* at March Term, 1924, of WAKE.

John Parish made a will devising a lot on West Edenton Street in the city of Raleigh to his wife for her natural life and at her death to his daughter Mary Parish. On the death of her mother Mary Parish became the sole owner; and on 18 December, 1920, she died leaving a will, the third item of which is as follows:

"My will and desire is that the house and lot I inherited from my father John Henry Parish, 316 West Edenton Street, shall be sold by my executor or his successor and the debts owing to me collected, and if there should be any surplus over and above the payment of debts that such surplus shall be divided as follows: To my beloved cousin Miss Mollie J. Parish of Santa Ana, California, one hundred dollars. To my beloved cousin James H. Ashford of Portageville, New Madrid County, Missouri, one hundred dollars. To my beloved cousin Vally B. Watson of Portageville, New Madrid County, Missouri, one hundred dollars. To my beloved cousin Percy Watson of Portageville, New Madrid County, Missouri, now deceased, one hundred dollars to be equally divided among his heirs. To my beloved cousin Mrs. Emma J. Woodward, twenty-five dollars. To my beloved cousin Iowa S. Parish, twenty-five dollars all both of Raleigh, N. C. To my beloved cousin Sam M. Parish of Portsmouth, Va., twenty-five dollars. To the First Baptist Church one hundred dollars. To my beloved friend Mrs. G. F. Kennedy, twenty-five dollars. To my beloved friend Alice Ball, fifty dollars, each of Raleigh, N. C."

Six of the defendants are heirs at law of the testatrix on her mother's side; the petitioner and all the other defendants are heirs at law on her father's side. The property on West Edenton Street was sold and there remains in the hands of the executors $3,565.01 after deducting the legacies set out in the third item of the will. The testatrix was never married. She died leaving neither father nor mother, brother nor sister, uncle nor aunt. The fourth canon of descents is as follows: "On failure of lineal descendants, and where the inheritance has been transmitted by descent from an ancestor, or has been derived by gift, devise or settlement from an ancestor, to whom the person thus advanced would, in the event of such ancestor's death, have been the heir or one of the heirs, the inheritance shall descend to the next collateral relations, capable of inheriting, of the person last seized, who were of the blood of such ancestor, subject to the two preceding rules." C. S., 1654, Rule 4.

The judgment directs the clerk, after deducting costs and an attorney's fee, to pay the fund ($3,565.01) to the next of kin of the testatrix both on the father's side and on the mother's side in the proportions therein set out. The plaintiff excepted and appealed.

*John W. Hinsdale for plaintiff.*
*Manning & Manning for relators on mother's side.*

ADAMS, J. By equitable conversion is meant a change of property from real into personal, or from personal into real, not actually taking place, but presumed to exist only by construction or intendment of equity. Bispham's Prin. Eq., sec. 307; *Duckworth v. Jordan,* 138 N. C., 521; *McIver v. McKinney,* 184 N. C., 393. The appellant does not deny that the testatrix directed an equitable conversion into personalty of the house and lot on West Edenton Street; but she contends that the conversion was limited to the purpose of paying the specific bequests set forth in the third item of the will and that the portion of the fund remaining after satisfying these legacies should be treated as real estate subject to devolution as prescribed by the fourth canon of descents. She insists that as the conversion was intended for a specific purpose and this purpose was fulfilled there was a resulting trust in the surplus of the fund which passed to the heir as realty. But this principle does not apply when a contrary purpose is clearly indicated by the devise. After discussing the English doctrine Bispham says: "In the United States the rule under consideration has not received a construction so favorable to the heir. In *Craig v. Leslie* it was said to be settled, 'that, if the intent of the testator appears to have been to stamp upon the proceeds of the land described to be sold the quality of personalty, not only to subserve the particular purposes of the will, but to all intents, the claim of the heir at law to a resulting trust is defeated, and the estate is considered to be personal.' It was accordingly held that the blending of the proceeds of the realty with the personalty, so as to form a common fund, for all the purposes of the will, though it should happen that some of them fail, will render the conversion absolute." Prin. of Eq., sec. 318.

This Court applied the principle in *Phifer v. Giles,* 159 N. C., 143, in which *Allen, J.,* said: "The will of Mrs. Phifer bequeaths and devises personal and real property, in trust, with power to sell, without making any distinction between the two kinds of property, which is evidence of an intention to convert the whole to personalty (*Burr v. Sim,* 29 A. D., 52), and it directs the application of the proceeds, which indicates a purpose for all to be sold. The general scope of the will, examined by itself and without reference to the facts now alleged, suggests that the testatrix thought it would be necessary to sell the whole, and that she

disposed of it for that purpose, which would be a conversion. *Ford v. Ford,* 2 Am. St., 124; *Lent v. Howard,* 89 N. Y., 169."

A careful consideration of the devise in question convinces us that the testatrix intended to effect a conversion of the property for the purpose of distributing the proceeds among her next of kin both on her father's side and on her mother's. She directed that her debts be collected, that the lot be sold and if a surplus should remain over and above the payment of debts such surplus should be distributed among her legatees. It was her obvious purpose to dispose of the entire proceeds of the sale as personal property; for she manifestly did not contemplate the disposition of any part of the surplus as real estate.

The judgment is
Affirmed.